## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THERESA PLATT,<br>        Plaintiff,<br><br>        v.<br><br>DISTRICT OF COLUMBIA,<br>        Defendant. | Civil Action No. 14-1173 (CKK-AK) |

### MEMORANDUM OPINION
(March 7, 2016)

Plaintiff Theresa Platt brought this action under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et. seq.*, against Defendant District of Columbia ("Defendant" or "the District"), seeking reimbursement of attorneys' fees and costs incurred by Plaintiff in an administrative action brought by Plaintiff, on behalf of her minor child, under the IDEA against the District.

Presently before the Court are Plaintiff's [21] Amended Motion for Summary Judgment and Defendant's [22] Cross Motion for Summary Judgment. On November 30, 2015, Magistrate Judge Alan Kay issued a Report and Recommendation (hereinafter "Magistrate Judge Kay's Report"), recommending that both Plaintiff's Amended Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment be granted in part and denied in part. Specifically, Magistrate Judge Kay recommended that Plaintiff be awarded $46,498.23 in fees and $122.75 in costs, for a total amount of $46,620.98. Report & Recomm. ("R&R"), ECF No. [29], at 16.

On December 14, 2015, Plaintiff filed objections to Magistrate Judge Kay's Report, requesting that the Court sustain her objections and award her $86,295.26 in attorney's fees and

costs.  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a

whole, the Court finds that Plaintiff's objections do not have merit.

Accordingly, the Court shall ADOPT Magistrate Judge Kay's well-reasoned and

thorough Report and Recommendation in its entirety.  The Court shall GRANT-IN-PART and

DENY-IN-PART Plaintiff's [21] Motion for Summary Judgment and shall GRANT-IN-PART

and DENY-IN-PART Defendant's [22] Cross Motion for Summary Judgment.  The Court shall

award Plaintiff $46,620.98 in attorney's fees and costs.

## I. BACKGROUND

Plaintiff is the parent of M.P. ("Student"), a minor child found eligible to receive special

education and related services under the IDEA as a student with a disability.  *See* 20 U.S.C.

§ 1400 *et. seq.*  Defendant is a municipal corporation that "receives federal funds pursuant to the

[IDEA], . . . , in exchange for providing a free and appropriate public education ("FAPE"), and is

obligated to comply with the applicable federal regulations and statutes, including but not

limited, to [the IDEA]."  *See* 20 U.S.C. § 1411, 1412(a)(1)(A).

### A. The Administrative Due Process Complaint

On March 11, 2013, Plaintiff filed an administrative due process complaint on behalf of

M.P. against the District of Columbia Public Schools ("DCPS"), alleging that DCPS had failed

to meet its obligations to provide Student with a FAPE under the IDEA.  *See* Hearing Officer

Determination ("HOD"), ECF No. [21-2], at 4.  At the time the administrative complaint was

---

[1] Plaintiff's Amended Motion for Summary Judgment, ECF No. [21]; Defendant's Opposition to
Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment, ECF No.
[22]; Plaintiff's Opposition and Reply to Defendant's Cross Motion for Summary Judgment,
ECF No. [24]; Defendant's Reply to Plaintiff's Opposition to Defendant's Cross Motion for
Summary Judgment, ECF No. [28]; Plaintiff's Objections to the Magistrate Judge's Report and
Recommendation, ECF No. [30]; Defendant's Response to Plaintiff's Objections, ECF No. [33];
Plaintiff's Reply in Support of Plaintiff's Objections, ECF No. [34].

filed, Student was seventeen years old and was repeating the 9th grade at Eastern Senior High

School "(Eastern")".  *Id*. at 1, n.2; 9.  Also, at that time, Student was receiving special education

and related services under the IDEA, pursuant to an individualized education plan ("IEP") issued

on October 11, 2012.  *Id*. at 9.

Student's IEP for the 2012-2013 school year required a weekly 5 hours of specialized

instruction in the general education setting and 10 hours of specialized instruction outside the

general education setting, with a monthly total of 120 minutes of behavioral support services

outside general education.  *Id*. at 10.

Student's first referral for determination of special education eligibility occurred in 2005.

*Id*. at 9.  However, Student was found ineligible.  *Id*.  There was no additional referral for

evaluation until Student's attorney sent a letter referring Student for special education eligibility

determination on May 18, 2012.  *Id*.  Subsequent to that letter, DCPS personnel held several

eligibility meetings, and Student began receiving special education and related services on

October 11, 2012 pursuant to the aforementioned IEP issued on the same day.  *Id*.

Plaintiff's administrative complaint asserted that Student was entitled to relief under the

IDEA on several grounds:  (1) Plaintiff alleged that Student had also received IDEA services

during the 2009-2010 school year pursuant to an IEP purportedly issued in October 2009, but

those services had been improperly stopped without notification; and (2) DCPS had denied

Student a FAPE by failing to meet certain obligations under the IDEA in the 2010-2011, 2011-

2012, and 2012-2013 school years.  *See id*. at 3, 4.

### B.  Pretrial Conferences and Hearings before the Hearing Officer

The Hearing Officer held pretrial conferences on April 15, 2013 and April 25, 2013, as

well as a status conference on May 1, 2013.  *Id*. at 2.  The Hearing Officer then conducted an

evidentiary hearing on May 15, 2013 regarding Plaintiff's claim that Student had received IDEA services as a 7th grader in 2009-2010 pursuant to an IEP allegedly issued in October 2009.  *Id.* at 2.  At the evidentiary hearing, Plaintiff argued that a Data Evaluation Review dated February 5, 2013 indicated that Student had received an IEP in October 2009.  *See* Order re Evidentiary Hearing of May 15, 2013 ("Order re Evidentiary Hearing"); ECF No. [30-1], at 4.  However, the author of the Data Evaluation Review testified at the hearing she had inadvertently included information about another student with a similar name, and that she subsequently had corrected the Data Evaluation Review to clarify that Student actually had *not* received the October 2009 IEP in question.  *Id.* at 5.

In an order issued on May 16, 2013, the Hearing Officer denied Plaintiff's requested relief in connection with the IEP purportedly issued in October 2009.  Specifically, the Hearing Officer concluded that an IEP for Student did not exist in October 2009, and that Plaintiff had not put forward sufficient evidence to conclude that Student was receiving special education and related services under the IDEA at that time.  *Id.* at 4.  The Hearing Officer based her decision on her determination that the author of the Data Evaluation Review was a credible witness and on her consideration of additional documentary evidence provided by DCPS.  *Id.* at 5-6.

In that same order, the Hearing Officer also denied Plaintiff's "Motion for Missing Records Presumption," in which Plaintiff argued in the alternative that Student was an eligible student in 2009 on the basis that DCPS had failed to provide Plaintiff the opportunity to inspect and review educational records under applicable regulations.  *Id.* at 6.  The Hearing Officer further held that Plaintiff had not established a basis for extending IDEA's two-year statute of limitations, and that the Hearing Officer would limit her inquiry to actions that were alleged to

have occurred between March 11, 2011 and March 11, 2013—the two-year window immediately

preceding the filing of the administrative due process complaint.  *Id.* at 8.[2]

### C.  The Due Process Hearing and the Administrative Decision

On May 21, 2013 and May 22, 2013, the Hearing Officer held a due process hearing to

determine whether Student was entitled to compensatory education on the basis that DCPS had

denied Student a FAPE by failing to meet certain obligations under the IDEA between March 11,

2011 and March 11, 2013.  Specifically, the due process hearing addressed four issues:

1.  Whether DCPS denied Student a FAPE by failing to provide timely evaluations and re-
    evaluations in all areas of suspected disability ("Ground 1");

2.  Whether DCPS denied Student a FAPE by failing to timely identify Student as having an
    emotional  disability, a specific learning disability, and an intellectual disability (this
    allegation was in part an assertion that DCPS did not meet its "Child Find"
    responsibilities to Student) ("Ground 2");

3.  Whether DCPS denied Student a FAPE by failing to provide an adequate IEP ("Ground
    3");

4.  Whether Student was entitled to compensatory education.

*Id.* at 4.

The Hearing Officer admitted 45 exhibits on behalf of Plaintiff, 26 exhibits on behalf of

DCPS, and 35 exhibits related to the procedural posture of the administrative proceeding.  *Id.* at

6-8.  At the hearing, Plaintiff testified and presented 8 witnesses, including two experts in the

areas of psychology and speech-language evaluation.  *Id.* at 8-9.  DCPS presented 2 witnesses, a

case manager / special education teacher and a special education coordinator from Eastern.  *Id.* at

8-9.

---

[2] The Court also notes that on May 16, 2013, the Hearing Officer denied Plaintiff's Motion to
Strike the testimony of one of the witnesses who had testified at the evidentiary hearing.  HOD at
2-3.  Additionally, the Hearing Officer denied a Motion to Dismiss, in which Defendant argued
that the administrative complaint should be dismissed on the basis that Student was turning 18 on
May 17, 2013.  *See id.* at 3.

On June 4, 2013, the Hearing Officer issued an administrative decision, concluding that Student was entitled to certain compensatory education. *See id.* at 26-30. With respect to Plaintiff's asserted grounds for relief, the Hearing Officer issued the following findings:

1. With respect to Ground 1: DCPS did not deny Student a FAPE by failing to provide timely evaluations and re-evaluations in all areas of suspected disability.

2. With respect to Ground 2: DCPS failed to meet its Child Find obligation by failing to identify Student as a child with an emotional disability and/or a specific learning. However, DCPS did not fail to meet its Child Find obligation by failing to identify Student as a child with an intellectual disability. Also, DCPS did not deny Student a FAPE by failing to identify Student as a student with a specific learning disability, an emotional disability, and an intellectual disability.

3. With respect to Ground 3: DCPS denied Student a FAPE by failing to provide him an appropriate IEP.

*Id.* at 30.

In finding that Student was entitled compensatory relief, the Hearing Officer ordered DCPS to hold a multidisciplinary team ("MDT") meeting to develop a compensatory education plan that would include (1) 15 hours of tutoring each week during the summer of 2013; (2) 5 hours of tutoring per week during the 2013-2014 school year; and (3) the option of a full-time non-public placement for the 2013-2014 school year. *Id.* at 31-32. The Hearing Officer, however, declined to award the additional relief requested by Plaintiff, which included Student's placement in a full-time therapeutic day school and certain "wrap around services," such as therapeutic transport, individual and family counseling, medication management, and therapeutic recreation separate and apart from the services provided in the full-time day school placement. *Id.* at 4, 30.

At all times relevant to the administrative proceedings, Plaintiff was represented by Mr. Pierre Bergeron, Esq. *Id.* at 3.

D.  The Instant Proceeding

On July 11, 2014, Plaintiff filed a Complaint in the instant case, seeking reimbursement of attorney's fees and costs incurred by Plaintiff in the above-described administrative action, on the ground that Plaintiff is a "prevailing party" under 20 U.S.C. § 1415(i)(3)(B).

On November 17, 2014, Plaintiff filed her First Motion for Summary Judgment on her claim for attorney's fees and costs.  On December 17, 2014, the Court issued an Order staying Plaintiff's summary judgment motion, pending the resolution of an appeal involving similar issues in *Price v. District of Columbia*, 792 F.3d 112 (D.C. Cir. 2015).[3]  After the D.C. Circuit issued its decision in *Price*, both parties filed and fully briefed cross motions for summary judgment.  *See* ECF Nos. [21], [22], [23], [24], [25], and [28].  On August 24, 2015, the Court referred the case to Magistrate Judge Alan Kay for (1) full case management up to but excluding trial and (2) a report and recommendation on the cross motions for summary judgment.  *See* Minute Order (Aug. 24, 2015).  On November 30, 2015, Magistrate Judge Alan Kay issued his Report and Recommendation, recommending that both motions be denied in part and granted in part.  *See* R&R, ECF No. [29].  Magistrate Judge Kay's Report recommended the following:

> In this case, [Plaintiff's counsel] documented a total of 170.5 hours, less 3.4 hours of travel time (totaling $647.63), leaving 167.1 hours which should be reduced by 24.8 hours for work on unsuccessful issues, leaving 142.3 hours . . . Applying rates equivalent to 75% of *Laffey* Matrix rates result in fees of . . . $53,941.88. Reducing this total by 15% (to account for Plaintiff's partial prevailing party status) results in fees of $45,850.60, but adding travel time at a rate of $647.63

---

3 *Price* involved an issue relevant to this proceeding, specifically, whether a plaintiff, whose counsel was appointed, was entitled to recover attorney's fees under the IDEA in an amount more than $90.00 per hour.  In *Price*, 792 F.3d at 116, the Court of Appeals found that "[t]he $90 per hour statutory compensation rate in the D.C. Criminal Justice Act did not preempt the prevailing rate determination required in IDEA fee shifting, nor is it an appropriate factor to consider in making the prevailing rate determination[.]"  In a concurring opinion, Circuit Court Judge Janice Rogers Brown agreed with that assessment but noted that the *Laffey* Matrix rate of $505/hour is "also an irrelevant benchmark for administrative proceedings before D.C. Public School hearing officers." 792 F.3d at 116-17.

> results in total fees of $46,498.23.  Costs amount to $122.75.  Accordingly, the
> undersigned recommends that Plaintiff be awarded fees and costs of $46,620.98.

R&R at 15-16.

On December 14, 2015, Plaintiff filed her objections to Magistrate Judge Kay's Report.

On January 14, 2016, Defendant filed its opposition to Plaintiff's objections, and on January 21,

2016, Plaintiff filed her reply.  Accordingly, Plaintiff's objections are ripe for the Court's review.

## II. LEGAL STANDARD

Under Local Civil Rule 72.3(b), "[a]ny party may file for consideration by the district

judge written objections to the magistrate judge's proposed findings and recommendations issued

under [Local Civil Rule 72.3(a) ] within 14 days[.]" Local Civ. R. 72.3(b).  Local Civil Rule

72.3(b) further provides that "[t]he objections shall specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for the

objection." *Id.*  Pursuant to Local Civil Rule 72.3(c), "a district judge shall make a de novo

determination of those portions of a magistrate judge's findings and recommendations to which

objection is made . . . ." *Id.  See also Means v. District of Columbia,* 999 F.Supp.2d 128, 132

(D.D.C. 2013) ("District courts must apply a *de novo* standard of review when considering

objections to, or adoption of, a magistrate judge's Report and Recommendation.").  The district

judge "may accept, reject, or modify, in whole or in part, the findings and recommendations of

the magistrate judge, or may recommit the matter to the magistrate judge with instructions."

Local Civ. R. 72.3(c).

## III. DISCUSSION

Plaintiff raises three objections to Magistrate Judge Kay's Report.  First, Plaintiff contends

that Magistrate Judge Kay failed to apply the correct summary judgment standard.  Pl.'s Objections

at 1-3.  Second, Plaintiff contends that Magistrate Judge Kay erred by declining to award full

attorney's fees to Plaintiff because Plaintiff "substantially prevailed" in the underlying administrative action. *Id.* at 3-5. And third, Plaintiff contends that Magistrate Judge Kay erred by awarding attorney's fees at a rate not based on the record evidence. *Id.* at 5-7.

The Court shall begin by discussing the applicable legal framework regarding the award of attorney's fees and costs in an IDEA action, and then shall address each of Plaintiff's objections.

### A. Legal Framework

Under the IDEA, this Court has discretion to "award reasonable attorney's fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability" in an administrative proceeding. 20 U.S.C. § 1415(i)(3)(B)(i)(I). An IDEA fee award "shall be based on rates *prevailing in the community* in which the action or proceeding arose for the *kind and quality* of services furnished." *Eley v. D.C.*, 793 F.3d 97, 99 (D.C. Cir. 2015) (quoting 20 U.S.C. § 1415(i)(3)(C)) (emphasis in *Eley*). If the Court finds that "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for *similar services* by attorneys of reasonably comparable skill, reputation, and experience," it "shall reduce . . . the amount of the attorneys' fees awarded." *Eley*, 793 F.3d at 99 (quoting 20 U.S.C. § 1415(i)(3)(F)(ii)) (emphasis in *Eley*).

"The IDEA provides no further guidance for determining an appropriate fee award." *Eley*, 793 F.3d at 100. In *Blum v. Stenson,* 465 U.S. 886 (1984), however, the United States Supreme Court laid the foundation for a three-part analysis used in this Circuit. *Eley*, 793 F.3d at 100 (citing *Blum*, 465 U.S. at 895 n.11). First, the Court must determine the "number of hours reasonably expended in litigation." *Id.* (citing *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1517 (D.C. Cir. 1988) (*en banc*)). Second, it must set the "reasonable hourly rate." *Id.* Finally, the Court must determine whether use of a multiplier is warranted. *Id.*

Plaintiff, as the fee applicant, "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates" and the opposing party remains "free to rebut a fee claim." *Covington v. Dist. of Columbia,* 57 F.3d 1101, 1107–08 (D.C. Cir. 1995). To meet her burden of persuasion, Plaintiff must "produce satisfactory evidence—*in addition to [her] attorney's own affidavits*—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Eley*, 793 F.3d at 104 ((quoting *Covington,* 57 F.3d at 1109) (quoting *Blum*, 465 U.S. at 895 n. 11)) (emphasis in *Eley*). If Plaintiff provides such information, then a presumption would arise that the hours billed are reasonable and the burden would shift to Defendant to rebut Plaintiff's showing. *See Covington,* 57 F.3d at 1109-10. However, if both parties fail to present satisfactory evidence demonstrating that the hourly rates are reasonable, then the Court may determine the reasonable rate by reference to the *Laffey* Matrix.[4] *See, e.g., Brown v. D.C.*, 80 F. Supp. 3d 90, 96 (D.D.C. 2015) (citing *McAllister v. D.C.*, 21 F. Supp. 3d 94, 100 (D.D.C.) *on reconsideration in part*, 53 F. Supp. 3d 55 (D.D.C. 2014) *aff'd*, 794 F.3d 15 (D.C. Cir. 2015). *Laffey* rates are not presumptively reasonable in IDEA administrative proceedings. *Eley*, 793 F.3d at 105. However, a district court may look to the complexity of the proceeding to establish whether the full *Laffey* rate is warranted. *See, e.g.*, *Brown* , 80 F. Supp. 3d at 96. When the underlying administrative proceeding does not concern complex matters, courts in this Circuit often have awarded 75% of the full *Laffey* rate for legal work completed. *See, e.g.*, *Brown* , 80 F. Supp. 3d at 98.

---

[4] The *Laffey* Matrix is a matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks. *Brown*, 80 F. Supp. 3d at 96 n.2. The Civil Division of the United States Attorney's Office for the District of Columbia prepares the matrix for use when a "fee-shifting" statute permits the recovery of reasonable attorneys' fees. *Id. Laffey* rates represent presumptive maximum rates for complex federal litigation. *Id.* at 96.

A.  <u>Summary Judgment Standard</u>

Plaintiff's first objection is that Magistrate Judge Kay applied an incorrect summary

judgment standard, and in so doing, erred in allocating the burden of production.  Pl.'s

Objections at 2.  Plaintiff asserts that the Court may grant summary judgment to Defendant on

the issue of Plaintiff's claim for attorney's fees only if Defendant "present[s] specific facts that

would enable a reasonable jury to find in its favor."  Pl.'s Objections at 2.

As a preliminary matter, the Court reviews *de novo* those portions of Magistrate Judge

Kay's findings and recommendations to which Plaintiff has objected.  *See* Local Civil Rule

72.3(c).  Accordingly, it is not necessary for the Court to critique the standard of review set forth

in Magistrate Judge Kay's Report.  Nonetheless, because Plaintiff's description of the summary

judgment standard is erroneous, the Court shall address Plaintiff's objection and set forth the

proper standard, which the Court shall apply in the instant case.

Pursuant to Federal Rule of Civil Procedure 56(a), a court will grant summary judgment

if the movant shows that " 'there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247 (1986) (quoting Fed. R. Civ. P. 56).  On the other hand, a court will grant summary

judgment against a party "who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *Celotex* explained that a moving

defendant's summary judgment burden "may be discharged" merely by "showing—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case."  *Id.* at 325.

Here, Plaintiff, as the party moving for summary judgment on legal fees, bears the burden of demonstrating the reasonableness of the fees requested, both in terms of hours spent and hourly rate. *See Eley*, 793 F.3d at 99-100. Accordingly, Defendant's burden is merely to point out to the Court that Plaintiff cannot prove the reasonableness of the fees requested. *See*, *e.g.*, *Blum*, 465 U.S. at 897 (noting that the fee petitioner bears the burden of establishing all elements of the fees petition).[5]

### B. Reductions to Plaintiff's Fee Award are Appropriate.

Plaintiff's second objection is that Magistrate Judge Kay erred by reducing the amount of fees awarded on the basis that Plaintiff was a partially prevailing party in the administrative proceeding. *See* Pl.'s Objections at 3.

#### 1. 24.8 Hour Reduction regarding Plaintiff's Unsuccessful Efforts to Obtain Relief related to the alleged 2009 IEP.

Plaintiff disputes Magistrate Judge Kay's recommendation that Plaintiff not be reimbursed for specific charges relating to issues related to the purported 2009 IEP—missing evidence, statute of limitations, and striking testimony. *See* R&R at 7. The Hearing Officer ruled against Plaintiff on each of these issues in a separate evidentiary hearing held before the due process hearing. *See* R&R at 7. As noted by Magistrate Judge Kay, time billed on these issues, which totals 24.8 hours, is easily identifiable on the Billing Statement prepared by Plaintiff's counsel. *See* R&R at 7, n.5; *see also* Billing Statement, ECF No. [21-3].

---

[5] The Court notes that Magistrate Judge Kay found that Plaintiff failed to proffer "satisfactory proof" linking *Laffey* Matrix rates to her attorney's work during the administrative process. *See* R&R at 13. In so finding, Magistrate Judge Kay concluded that Plaintiff had not met her burden to provide sufficient evidence demonstrating the reasonableness of the fees requested. Accordingly, it appears that Magistrate Judge Kay applied the appropriate standard of review under *Celotex*. *See* R&R at 4-5.

Plaintiff contends that the Court should award attorney's fees for time spent on these issues— issues on which plaintiff was completely unsuccessful—because Plaintiff "substantially prevailed in the underlying administrative action."  Pl.'s Objections at 3.  The Court finds Plaintiff's argument unavailing and contrary to controlling case law.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court outlined the appropriate inquiry when, as here, a fee applicant prevailed on many, but not all, of the claims in the underlying proceeding.  *See id.* at 436-47.  First, the district court must consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded."  *Id.* at 434.  If the unsuccessful claims were in fact unrelated to the successful ones, "a court must confine fee awards to work done on the successful claims" by "weeding out work done on unrelated unsuccessful claims from any award."  *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992); *see also Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1569 (D.C. Cir. 1993) ("In such cases, the fact finder is to 'prevent claimant from piggybacking fees incurred for work done on losing claims onto unrelated winning issues.' ").  The district court may do so by "attempt[ing] to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Hensley*, 461 U.S. at 436–37.  Claims are distinct and sufficiently unrelated where they do not involve a common core of facts and are not based on related legal theories. *Goos*, 997 F.2d at 1569.  Ultimately, "[t]here is no precise rule or formula for making these determinations," and the district court "necessarily has discretion in making this equitable judgment."  *Id.* at 436-47.

Here, the record indicates that Plaintiff was unsuccessful in obtaining any relief based on

Plaintiff's assertions that Student had received IDEA services in 7th grade pursuant to an IEP allegedly issued in October 2009 and that those services had been improperly stopped without notification to Plaintiff.  *See* HOD at 3.  The Hearing Officer described Plaintiff's contention regarding the purported 2009 IEP as a "core element in the complaint."  *Id.*

Plaintiff's unsuccessful claim regarding the purported 2009 IEP is separate and distinct from her successful claim that DCPS failed to provide her a FAPE between March 2011 and March 2013.  The claim regarding the purported 2009 IEP concerned a different time period and implicated different legal questions, such as whether Plaintiff's claim was barred by the applicable statute of limitations (it was).  Furthermore, the claim regarding the purported 2009 IEP was based on a legal theory that Student was issued an IEP that was then improperly taken away.  That legal theory is entirely distinct from the theory that DCPS denied Student a FAPE during the 2011-2012 and 2012-2013 school years.  Accordingly, there is nothing in the record to suggest that Plaintiff's unsuccessful and successful claims share a "common core of facts" or are "based on related legal theories."  *Goos*, 997 F.2d at 1569.[6]

In light of the foregoing, the Court finds that the 24.8 hours billed by plaintiff's counsel on unrelated, unsuccessful claims are "specific hours that should be eliminated" under *Hensley*. 461 U.S. at 436.  Accordingly, the Court shall adopt Magistrate Judge Kay's recommendation to remove these 24.8 hours from plaintiff's recovery of attorney's fees.[7]

---

[6] The Court also notes that the Hearing Officer held a separate evidentiary hearing to consider Plaintiff's claim regarding the purported 2009 IEP.

[7] The exclusion of the 24.8 hours would also be appropriate even if Plaintiff's claims regarding the alleged 2009 IEP were considered to be "related" to Plaintiff's claims regarding the 2012 IEP.  Where unsuccessful and successful claims are interrelated, *Hensley* requires the Court to "consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel." *Brooks*, 963 F.2d at 1535.  Under that analysis, a "reduction in fees based on the level of success is appropriate regardless of whether the unsuccessful claims are related to the successful ones." *A.B. by Holmes-Ramsey v. D.C.*, 19 F. Supp. 3d 201, 210 (D.D.C. 2014).

2. <u>15% Fee Reduction regarding Plaintiff's Efforts to Obtain Relief related to the Government's Denial of a FAPE in 2011-2013.</u>

Plaintiff also disputes Magistrate Judge Kay's recommendation that Plaintiff's overall fee award be reduced by 15%. *See* R&R at 7-8. In making his recommendation, Magistrate Judge Kay found that "while Plaintiff did prevail in terms of demonstrating denial of FAPE and entitlement to compensatory education, Plaintiff did not prevail regarding the issue of assessments or in her proffer of Village Academy as a possible school for Student." *Id.* Therefore, because "charges relating to these issues cannot be easily separated from charges for issues on which Plaintiff did prevail," Magistrate Judge Kay recommended "that Plaintiff's fee award be reduced by 15% to account for the time spent on these issues." *Id.*

Plaintiff contends that the 15% fee reduction is unfounded because she "obtained the degree of success which warrants no reductions in attorneys' fees." Pl.'s Objections at 4. Plaintiff believes that Magistrate Judge Kay's Report ignores *Hensley*'s direction not to reduce attorneys' fees "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Again, the Court finds Plaintiff's arguments unavailing.[8]

---

Accordingly if the Court did not exclude the 24.8 hours for the reasons described above, it could simply reduce the overall fee award to account for the time spent on unsuccessful claims. *See id.*

[8] Plaintiff's objections also contain a curious argument that a particular provision in the IDEA, 20 U.S.C. § 1415(i)(3)(G), prohibits any reduction to her proposed rates because the DCPS failed to provide certain educational records in response to Plaintiff's requests. *See* Pl.'s Objections at 4-5. However, as Defendant points out, subparagraph (G) is inapposite here. Subparagraph (G) provides: "The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local education agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G). In turn, subparagraph (F) provides that in specific, enumerated circumstances—which are not implicated here—the Court has no discretion and must reduce any attorney's fees awarded. 20 U.S.C. § 1415(i)(3)(F) ("the court shall reduce, accordingly, the amount of the attorneys' fees awarded"). Accordingly, subparagraph (G) in no way affects this Court's discretionary authority to award reasonable attorneys' fees in this matter. *See* 20 U.S.C. § 1415(i)(3)(B)(i) ("In any

*Hensley* requires the Court to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." 461 U.S. at 434. In other words, the Court must "consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel." *Brooks*, 963 F.2d at 1535. This is a results-oriented inquiry: "it is the degree of the plaintiff's success that is the critical factor to the determination of the size of a reasonable fee." *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 47 (D.D.C.2012) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 786 (1989)). However, "a finding that the plaintiff obtained significant relief" does not end the analysis. *Hensley*, 461 U.S. at 439–40. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440. The ultimate question to be decided by the Court is what is "reasonable in light of [the plaintiff's] level of success." *Id.*

Here, the Court agrees with Plaintiff that she obtained significant relief in the administrative action. *See* Pl.'s Objections at 3. The Hearing Officer awarded Student hundreds of hours of compensatory education as well as the option of a full-time non-public placement. HOD at 30. However, as noted above, the Court's inquiry is not simply whether Plaintiff obtained "significant relief," but rather, whether the relief, however significant, is limited in comparison to the scope of the proceeding as a whole. *Hensley*, 461 U.S. at 440. As noted by Magistrate Judge Kay, Plaintiff did not prevail with respect to a number of issues before the Hearing Officer. *See* R&R at 7. In fact, five of the eight "Conclusions of Law" made by the Hearing Officer were rulings *against* Plaintiff:

---

action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees . . . .").

1. DCPS did not deny Student a FAPE by failing to provide a comprehensive psychological, speech-language or adaptive behavior assessment as part of the evaluation process (Conclusion of Law #1).

2. DCPS did not deny Student a FAPE by failing to provide a comprehensive psychological, speech-language or adaptive behavior assessment as part of the re-evaluation process (Conclusion of Law #2).

3. DCPS did not fail to meet its Child Find obligation by failing to identify Student as a child with an intellectual disability for the two years preceding the filing of this complaint (Conclusion of Law #4).

4. Student was not denied a FAPE by DCPS' failure to identify Student as a student with a specific learning disability, an emotional disability and an intellectual disability (Conclusion of Law #5).

5. Village Academy is not an appropriate placement for Student (Conclusion of Law #8).

HOD at 30.

Moreover, Plaintiff was also unsuccessful in obtaining certain relief sought, such as placement at Village Academy and "wrap around" services, including therapeutic transport, individual and family counseling, medication management, and therapeutic recreation separate and apart from the services provided in the full-time day school placement. *See id.* at 30-32.

In light of the foregoing, the Court finds that full compensation for all of the work performed by Plaintiff's counsel with respect to the issues before the Hearing Officer would be disproportionate to the degree of success achieved, thereby rendering the amount of fees requested by Plaintiff as unreasonable. *See Hensley*, 461 U.S. at 440. The Court further finds that a reduction in the amount of 15% is reasonable in light of the factors discussed above. Accordingly, the Court shall adopt Magistrate Judge Kay's recommendation to reduce the fee award by 15%.[9]

---

[9] The Court rejects any notion that the fee award is reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Pl.'s Objections at 4. As discussed above, Plaintiff did not prevail on a sizeable portion of the contentions raised in the administrative

C.   Establishing a Reasonable Fee.

Finally, Plaintiff objects to Magistrate Judge Kay's recommendation that the Court issue

a fee award compensating Plaintiff's counsel at a rate equivalent to 75% of *Laffey* rates, that is,

$378.75 / hour for work prior to June 1, 2013 and $382.50/hour for work on or after June 1,

2013.  *See* R&R at 5.

Plaintiff contends that the record evidence in this case establishes that the rate requested

by Plaintiff's counsel—that is equivalent to the USAO *Laffey* Rate—is in line with the prevailing

rates in the community for similar services by lawyers of reasonably comparable skills,

experience, and reputation.  *See* Pl.'s Objections at 5.  Plaintiff contends that she has

demonstrated the prevailing market rate of IDEA litigators by her submission of the following

evidence:  (1) an affidavit from Plaintiff's counsel in the underlying administrative action, (2) the

USAO *Laffey* Matrix, and (3) declarations from seven lawyers with experience in IDEA

litigation who practice in the District of Columbia.  *See* ECF Nos. [21-4] – [21-12].

Defendant disagrees with Plaintiff's assessment of the record evidence, and contends that

Plaintiff has failed to carry her burden to establish the prevailing market rate.  *See* Def.'s Opp'n

to Pl's Objections at 7; Def.'s Mot. for S.J., ECF No. [22], at 8-15.  Defendant contends that the

reasonable rate of compensation in this case is instead the rate frequently awarded by judges of

this district court—75% of the *Laffey* rate.  *See* Def.'s Mot. for S.J., ECF No. [22], at 15-22.

Upon close review of the record evidence, the Court finds that Plaintiff has not met her

burden of establishing "that the requested rates are in line with those prevailing in the

---

proceeding.  Accordingly, the Court finds that an award at 85% is reasonable in light of
Plaintiff's degree of success.  *See Hensley*, 461 U.S. at 436.

community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Eley*, 93 F.3d at 100 (quoting *Blum*, 465 U.S. at 895 n.11).

As a preliminary matter, because the *Laffey* Matrix was created for complex federal litigation and it contains presumptive *maximum* rates, *Laffey* rates are not presumptively reasonable in the context of IDEA actions. *Id.* at 105. For this reason, Plaintiff must justify the reasonableness of her counsel's rates by introducing other evidence into the record, such as "surveys []; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 101 (quoting *Covington,* 57 F.3d at 1109).

Here, the attorney declarations submitted by Plaintiff are not persuasive of Plaintiff's position, and if anything, demonstrate that the reasonable hourly rate in this case is well below the *Laffey* rate. Three of the seven declarations—the declarations of Ms. Diana M. Savit, Ms. Elizabeth T. Jester, and Ms. Emily B. Read— indicate that courts have recently found rates charged by those attorneys to be reasonable in the context of an IDEA administrative proceeding. *See* ECF Nos. [21-7], [21-6], [21-10]. However, the Court's analysis of the cases cited in those declarations reveals that Ms. Savit and Ms. Jester were charging rates between 10% and 25% *below* the *Laffey* rate. *See Garvin v. D.C.*, 851 F. Supp. 2d 101, 107 (D.D.C. 2012) (approving billing rates of $400-450 per hour where the relevant *Laffey* rates were $465-$475 per hour); *Cox v. D.C.*, 754 F. Supp. 2d 66, 75 (D.D.C. 2010) (approving billing rate of $400 per hour where the relevant *Laffey* rate was $465 per hour); *B.D. v. D.C.*, 75 F. Supp. 3d 225, 232-33 (D.D.C. 2014) (approving billing rate of $390 per hour where the relevant *Laffey* rate was $505 per hour). Moreover, in each case, the approving court considered the attorney's billing rate to be

reasonable precisely because the rate was below, not equal to, the *Laffey* rate.  The declaration

from a third attorney, Ms. Read, indicates that she charged, and was awarded, the *Laffey* rate for

her involvement as lead counsel in a complex class-action case litigated for over a decade in

federal court.  *See Blackman v. D.C.*, 56 F. Supp. 3d 19 (D.D.C. 2014).  In *Blackman*, Judge Paul

L. Friedman found that the *Laffey* rate was reasonable after finding that the case was *not* a

routine IDEA matter, but instead was a "complex case" that required a number of "skilled

litigators" to "research many novel questions of law under tight time constraints."  *Id.* at 29.

     The remaining four declarations do little else than show that several attorneys practicing

IDEA administrative proceedings in Washington, D.C. charge the *Laffey* rate.  *See* ECF Nos.

[21-8], [21-9], [21-11], [21-12].  None of those declarations assist the Court by "reciting the

precise fees that attorneys with similar qualifications have received from fee-paying clients in

comparable cases."  *Eley*, at 101 (quoting *Covington,* 57 F.3d at 1109).  At most, one declaration

provides a general, unsubstantiated statement that his firm "has had several clients who pay the

[*Laffey* rate] directly, regardless of whether reimbursement is ever obtained."  ECF No. [21-11],

at 2 (Decl. of Douglas Tyrka).  In sum, the Court agrees with Magistrate Judge Kay's assessment

that the proffered declarations "lack the specificity that would be helpful in determining the

prevailing market for IDEA litigation."  *See* R&R at 11-12.[10]

---

[10] The Court is also not persuaded by Plaintiff's observation that in many cases where the district court determined the "reasonable rate" to be 75% of the *Laffey* rate, the IDEA attorney had charged the full *Laffey* rate.  *See* Pl.'s Objections at 5, 6 (citing Plaintiff's "Table of Cases," ECF No. [24-1]; Statement of Interest of the United States, 11-cv-309, DKT #49).  The mere fact that some IDEA attorneys have *charged* the *Laffey* rate sheds no light on whether those attorneys ever received such rates "from fee-paying clients in comparable cases."  *Eley*, at 101 (quoting *Covington*, 57 F.3d at 1109).  If anything, the fact that the charged rates have been repeatedly examined by the courts and repeatedly found to be unreasonable provides evidence that the full *Laffey* rate is *not* a reasonable rate for routine IDEA matters.  *See id.* at 101 (quoting *Covington*, 57 F.3d at 1109) (fee applicant may justify her counsel's rates by introducing "evidence of recent fees awarded by the courts").

Accordingly, upon close review of the record evidence, the Court finds that Plaintiff has not met her burden of establishing "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Eley*, 93 F.3d at 100 (quoting *Blum*, 465 U.S. at 895 n.11).

The Court also notes that there is nothing in the record to suggest that the underlying administrative IDEA matter was unusually complex. The underlying action presented no "novel questions of law," burdensome discovery issues, or other unusual complexities. *See Blackman*, 56 F. Supp. 3d at 19. Instead, the underlying action is similar to a plethora of other, fairly routine IDEA administrative actions, which have warranted attorney fee awards at rates below *Laffey* rates. *See, e.g.*, *McClam v. D.C.*, 808 F. Supp. 2d 184, 189 (D.D.C. 2011) (awarding 75% of the *Laffey* Rate after finding that the IDEA action was not "complex" where it involved a three-day due process hearing, 41 exhibits, 11 witnesses, and closing arguments).[11] Accordingly, the Court finds that the full *Laffey* rate is not a "reasonable rate" in the context of the underlying IDEA proceeding.

Having found that the full *Laffey* rate is not a "reasonable rate" in this context of the underlying IDEA proceeding, the Court must determine the appropriate rate for the type of legal services provided by Plaintiff's counsel in the underlying IDEA action. Here, Defendant proposes an award of 75% USAO *Laffey* Matrix levels—and an overwhelming number of district

---

[11] The Court notes that the billing attorney in *McClam v. D.C.* was Ms. Elizabeth Jester, one of the IDEA attorneys who authored a declaration in this case. 808 F. Supp. 2d at 188. In *McClam*, Judge Rosemary M. Collyer found that Ms. Jester's rates of $400 and $450 per hour were not reasonable, even though that they were below the relevant *Laffey* rate of $465 per hour. *Id.* at 189-90. Instead, Judge Collyer found that the rates proposed by the District, $300 and $400 per hour, were reasonable. *Id.* In so holding, Judge Collyer cited guidelines established by the District, which set hourly rates for IDEA lawyers in the District of Columbia at a rate near 75% of the *Laffey* rate. *See id.*

courts have found such a rate to approximate the prevailing rate for IDEA administrative proceedings. *See, e.g., Snead v. D.C.*, ⸺ F.Supp.3d at ⸺, No. 1:15-CV-00376, 2015 WL 5921901, at *5 (D.D.C. Oct. 7, 2015); *Reed v. District of Columbia,* ⸺ F.Supp.3d at ⸺, No.14-1887, 2015 WL 5692871, at *13 (D.D.C. Sept. 18,2015); *Tillman,* ⸺ F.Supp.3d at ⸺, No. 14-1542, 2015 WL 5011656, at *6 (D.D.C. Aug. 24, 2015); *Jones,* ⸺ F.Supp.3d at ⸺, No. 15-155, 2015 WL 5093559, at *5–6 (D.D.C. Aug. 18, 2015); *Kirksey–Harrington,* ⸺ F.Supp.3d at ⸺, No. 14-180, 2015 WL 5014144, at *8 (D.D.C. Aug 18, 2015); *Brown v. District of Columbia,* 80 F. Supp. 3d 90, 98 (D.D.C. 2015).  The Court agrees with the District, as well as those members of this Court who have addressed the issue since the D.C. Circuit's *Eley* decision:  three-quarters of USAO *Laffey* rates is an appropriate metric for a routine IDEA administrative representation.  *See, e.g., Snead*, 2015 WL 5921901, at *5.  Accordingly, the Court shall adopt Magistrate Judge Kay's recommendation and issue a fee award compensating Plaintiff's counsel at a rate equivalent to 75% of *Laffey* rates, that is, $378.75 per hour for work prior to June 1, 2013 and $382.50 per hour for work on or after June 1, 2013.  *See* R&R at 5.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Kay's Report and Recommendation in its entirety.  The Court shall GRANT-IN-PART and DENY-IN-PART Plaintiff's [21] Motion for Summary Judgment and shall GRANT-IN-PART and DENY-IN-PART Defendant's [22] Cross Motion for Summary Judgment.  The Court shall award Plaintiff $46,620.98 in attorney's fees and costs.

An appropriate Order accompanies this Memorandum Opinion.

_/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE